IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE

Assigned on Briefs December 20, 2017

**STATE OF TENNESSEE v. DANIEL S. SHARP**

**Appeal from the Circuit Court for Blount County**
**No. C-21230    Tammy Harrington, Judge**

**No. E2017-00614-CCA-R3-CD**

The Defendant, Daniel S. Sharp, appeals from the Blount County Circuit Court's order revoking his community corrections sentence for his convictions for three counts of aggravated assault and one count of robbery. The Defendant contends that the trial court abused its discretion by revoking his community corrections sentence and by ordering him to serve the remainder of his effective ten-year sentence in confinement. We affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

ROBERT H. MONTGOMERY, JR., J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR., and D. KELLY THOMAS, JR., JJ., joined.

J. Liddell Kirk (on appeal), Knoxville, Tennessee; Raymond Mack Garner, District Public Defender; and Matthew Elrod (at revocation hearing), Assistant District Public Defender, for the appellant, Daniel S. Sharp.

Herbert H. Slatery III, Attorney General and Reporter; Renee W. Turner, Senior Counsel; Michael L. Flynn, District Attorney General; and Ryan Desmond, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

The Defendant was indicted on November 5, 2012, for three counts of aggravated assault and one count of robbery. On March 11, 2013, he pleaded guilty and received six years for robbery and four years for each aggravated assault conviction. The trial court ordered partial consecutive service, for an effective ten-year sentence to be served on community corrections after one year in confinement. A community corrections violation report was filed with the court on December 2, 2013, alleging that the Defendant had failed to report to his community corrections officer and to participate in various mandatory

programs. The community corrections violation report was filed with the court after the Defendant had received a September 20, 2013 warning from his community corrections officer. On December 13, 2013, the Defendant submitted to the community corrections violation, and by agreement of the parties, the court revoked his community corrections sentence, ordered him to serve one year in confinement, and reinstated his community corrections sentence.

On August 13, 2015, a community corrections violation report was filed with the trial court, alleging that the Defendant had failed a drug screen by testing positive for oxycodone and Suboxone, that the Defendant had obtained illegal narcotics from "someone known to traffic or sell narcotics," and that the Defendant was $30 in arrears in supervision fees. An arrest warrant for the violation was issued on the same day.

At the revocation hearing, community corrections officer Hilary Storie testified that the Defendant began reporting to her office after his July 2014 release from confinement. She said that the present violation allegation was the result of the Defendant's positive drug test for oxycodone and Suboxone on August 12, 2015. Ms. Storie stated that the Defendant admitted using Percocet and signed an in-house drug screen report admitting the drug use. The report was received as an exhibit, which reflects that the Defendant checked the box stating that he agreed with the findings of the drug screen and did not want further analysis of his urine sample. The report also reflects that the Defendant tested positive for oxycodone and Suboxone and that the box stating the Defendant disagreed with the results was unchecked. Ms. Storie did not know whether the drug screen results were verified by a third-party laboratory but said Brian Hensley administered the drug screen.

Ms. Storie testified that at the time the community corrections violation warrant was issued on August 13, 2015, the Defendant owed $30 in supervision fees. She said that the warrant was served on the Defendant around December 16, 2016. She said her file did not reflect that the Defendant reported to any community corrections officer between August 13, 2015, and December 16, 2016.

Community corrections officer Brian Hensley testified that he was not the Defendant's supervising officer but that as the district supervisor, he oversaw the community corrections supervision for all males assigned to his office. Mr. Hensley said that he was the Defendant's initial supervising officer and that during this time, the Defendant's community corrections sentence was revoked for failure to follow the rules of his release and for failing a drug screen.

Mr. Hensley testified that he administered the Defendant's August 12, 2015 drug screen. Mr. Hensley said that after receiving the results, he questioned the Defendant about whether the results were accurate. Mr. Hensley said that the Defendant agreed with the drug

screen results, checked the box on the in-house drug screen report reflecting his agreement, and signed the document. Mr. Hensley said that after the Defendant signed the document, the Defendant admitted consuming two, five-milligram Percocet tablets within three days of the drug screen. The Defendant signed a drug use admission form, which was received as an exhibit. The form stated that the Defendant had undergone a drug screen, that he admitted consuming two, five-milligram Percocet tablets, and that the drug screen was positive for oxycodone and Suboxone. Mr. Hensley agreed that Percocet would result in a positive result for oxycodone. He said that the Defendant's urine sample would have been sent to Redwood Toxicology for further analysis had the Defendant disputed the positive results.

The trial court revoked the Defendant's community corrections sentence and ordered him to serve the remainder of his effective ten-year sentence in confinement. The court noted that after initially being placed on community corrections, the Defendant violated the conditions of his release and that the parties agreed for the Defendant to be placed on community corrections after one year in confinement. The court found that the State had established by a preponderance of the evidence that the Defendant violated the conditions of his release by using oxycodone and Suboxone. The court found that the Defendant admitted using drugs three days before the August 12, 2015 drug screen.

Relative to whether the Defendant should serve the remainder of his sentence in confinement, the trial court noted that after the drug screen was administered, the Defendant stopped reporting to his community corrections officer, which prevented the State from serving the violation warrant upon the Defendant for approximately sixteen months. The court noted that although an amended violation report was never filed alleging the Defendant had absconded from supervision, the Defendant "was just out there . . . [and] knew what was going to happen." The court noted that the Defendant had already served two, one-year periods in confinement and that the second period was "somewhat generous when you balance out the safety of the community [based upon the nature of the offenses] and then his continued illegal drug use." The court ordered the Defendant to serve the balance of his sentence based upon the Defendant's previously violating the conditions of his release, his previous jail service, the nature of the conviction offenses, his continued illegal drug use, and his leaving the jurisdiction for more than one year after failing the drug screen rather than seeking treatment. This appeal followed.

The Defendant contends that the trial court abused its discretion by revoking his community corrections sentence. He argues that the in-house drug screen results and the Defendant's statement that he used controlled substances were inadmissible and that the trial court should not have relied upon this evidence to revoke his community corrections sentence. The State responds that the evidence was admissible and that the record supports the court's revoking the Defendant's community corrections sentence and ordering him to serve the remainder of his sentence. We agree with the State.

A trial court may revoke a defendant's probation upon its finding by a preponderance of the evidence that the defendant violated a condition of the sentence. T.C.A. § 40-35-311(e) (2014) (prescribing the procedure for probation revocation proceedings). Given the similar nature of a sentence of community corrections and a sentence of probation, the same principles are applicable in deciding whether the revocation of a community corrections sentence is proper. *State v. Harkins*, 811 S.W.2d 79, 83 (Tenn. 1991). Our supreme court has concluded that a trial court's decision to revoke a defendant's community corrections sentence "will not be disturbed on appeal unless . . . there has been an abuse of discretion." *Id*. at 82 (citing *State v. Williamson*, 619 S.W.2d 145, 146 (Tenn. Crim. App. 1981)). An abuse of discretion has been established when the "record contains no substantial evidence to support the conclusion of the trial judge that a violation of the conditions of probation has occurred." *State v. Delp*, 614 S.W.2d 395, 398 (Tenn. Crim. App. 1980); *see State v. Shaffer*, 45 S.W.3d 553, 554 (Tenn. 2001); *State v. Grear*, 568 S.W.2d 285, 286 (Tenn. 1978). A finding of abuse of discretion "'reflects that the trial court's logic and reasoning [were] improper when viewed in light of the factual circumstances and relevant legal principles involved in a particular case.'" *Shaffer*, 45 S.W.3d at 555 (quoting *State v. Moore*, 6 S.W.3d 235, 242 (Tenn. 1999)).

When a trial court finds by a preponderance of the evidence that a defendant has violated the conditions of probation, the court "shall have the right . . . to revoke the probation." T.C.A. § 40-35-311(e)(1) (2014). "In probation revocation hearings, the credibility of witnesses is for the determination of the trial judge." *Carver v. State*, 570 S.W.2d 872, 875 (Tenn. Crim. App. 1978) (citing *Bledsoe v. State*, 387 S.W.2d 811, 814 (Tenn. 1965)). When a defendant's community corrections sentence is revoked, the court "may resentence the defendant to any appropriate sentencing alternative, including incarceration, for any period of time up to the maximum sentence provided for the offense committed." T.C.A. § 40-36-106(e)(4) (2014).

## A. In-House Drug Screen Report

The Defendant argues that the in-house drug screen report is equivalent to a laboratory report as defined in Tennessee Code Annotated section 40-35-311(c) (2014) and that the State failed to comply with the statute before seeking admission of the report. Alternatively, the Defendant argues that even if the drug screen report is not a laboratory report as contemplated by the statute, the State failed to establish that the procedures used during the in-house analysis had indicia of reliability pursuant to *State v. Wade*, 863 S.W.2d 406 (Tenn. 1993). The State responds that the statute is inapplicable because the in-house drug screen was not sent to a third-party laboratory for analysis and because the Defendant agreed with the results of the analysis.

The trial court found that Ms. Storie was the proper custodian of the in-house drug screen report, that she had proper possession of the report, and that the report contained reliable hearsay. We note that the defense conceded at the revocation hearing that Ms. Storie was the proper custodian of the records. The court found that no laboratory report existed in this case as contemplated by Tennessee Code Annotated section 40-35-311(c) because the sample provided by the Defendant was not analyzed by a third-party laboratory. The court reviewed the in-house drug screen report, noting the Defendant's signature on the report that he agreed with the results of the drug screen. The court determined that the report was admissible as reliable hearsay.

"[T]he full panoply of rights due a defendant in criminal prosecutions" does not apply to probation and community corrections revocation hearings. *Wade*, 863 S.W.2d at 408 (internal quotation marks and citation omitted). Hearsay evidence is generally admissible in a revocation hearing, however, a defendant's confrontation right precludes the admission of hearsay evidence unless it is reliable. *Id*. In order for hearsay evidence to be deemed reliable, a trial court must find that "good cause" exists justifying the denial to confront witnesses and that the hearsay evidence is reliable. *Id*. at 409. In *Wade*, our supreme court held that a defendant's probation may not be revoked based solely upon a laboratory report in the absence of testimony unless good cause exists relative to why the technician who performed the test did not testify at the revocation hearing and evidence that the laboratory report is reliable. *Wade*, 863 S.W.2d at 409.

Tennessee Code Annotated section 40-35-311(c) governs the admissibility of "laboratory reports" relative to a defendant's "drug test" at a revocation hearing. A laboratory report is admissible in the absence of testimony from the technician who performed the test when the report is accompanied by an affidavit that contains the identity of the technician, the technician's qualifications, a description of the methodology utilized during the test, a statement that the methodology is the most accurate test for the identified controlled substance, a certification that the test results are "reliable and accurate," a certification that the procedures and protocols of the test were followed, and an acknowledgment that submission of false information could result in a prosecution for perjury. *Id*. at (c)(1)(A)-(G).

In the present case, the defense conceded at the revocation hearing that the in-house drug screen report was not a laboratory report created by a technician at an independent laboratory as contemplated by Code section 40-35-311(c). Rather, the record reflects that the report was an office form completed, in part, by Mr. Hensley, who administered the drug screen, and by the Defendant. The report reflects the Defendant's initials, indicating that he provided Mr. Hensley a urine sample for the drug screen, and a checklist completed by the Defendant showing that he had not consumed any of the specified controlled substances listed on the form. The Defendant tested positive for oxycodone and Suboxone, and Mr.

Hensley testified that he questioned the Defendant about the results. Mr. Hensley said that the Defendant did not dispute the results, and the report reflects that the Defendant agreed with the findings of the drug screen and did not "wish" for further testing of his urine sample. The report also reflects Mr. Hensley's and the Defendant's signatures. The witness testimony showed that the Defendant's urine sample was not further analyzed because the Defendant did not dispute the results of the in-house drug screen and because he admitted consuming Percocet within three days of the drug screen.

The trial court's reliance on the in-house drug screen report was proper, and we conclude that the Defendant's due process rights were not violated by the admission of the form. Mr. Hensley, who administered the drug screen, testified at the revocation hearing, and although the Defendant was permitted to cross-examine Mr. Hensley, the defense did not question Mr. Hensley. The report was completed by Mr. Hensley and by the Defendant, and the Defendant did not dispute the results of the analysis. A third-party laboratory analysis and a formal laboratory report created by a technician was unnecessary when the Defendant agreed with the results of the in-house analysis and declined to have the sample analyzed further. We note that the report at issue in *Wade* was created by a third-party laboratory and that the defendant disputed the results of the analysis. *Wade*, 863 S.W.2d at 408. Therefore, although the in-house drug screen report contains hearsay evidence, the record does not reflect that the report contains unreliable information.

Furthermore, the Defendant's statement in the report that he did not dispute the results of the in-house analysis and his admitting to Mr. Hensley that he consumed Percocet before the analysis were also admissible as an admission by a party-opponent. *See* Tenn. R. Evid. 803(1.2)(A). The Defendant's statement offered by the prosecution is not excluded on the basis of hearsay. *See id*. We conclude that the trial court's reliance on the in-house drug screen report in revoking the Defendant's community corrections sentence was proper. The Defendant is not entitled to relief on this basis.

## B.    Proper Notice

Relative to the Defendant's written admission to using controlled substances, he argues that the State failed to provide notice that his admission would be used as evidence at the revocation hearing. Although the Defendant concedes that the violation warrant "contained notice of the allegation that [he] violated the terms of release by using controlled substances," he argues that the State should have provided additional notice that it intended to use his "signed admission" against him at the revocation hearing. The State responds that the admission is encompassed by the violation allegations. We agree with the State.

Relative to the Defendant's admission, the trial court found that Ms. Storie was the proper custodian for the drug use admission form and that the form contained reliable

-6-

hearsay. The court also reviewed the drug use admission form, noting the Defendant's signature on the form reflected that he admitted using two, five-milligram Percocet tablets within three days of the drug screen and that the screen showed positive results for oxycodone and Suboxone. The trial court found that the allegation on the community corrections violation warrant stating that on or about August 12, 2015, the Defendant failed a drug screen by testing positive for oxycodone and Suboxone provided sufficient notice of the basis for which the State sought revocation.

The record reflects that the community corrections violation warrant alleged, in relevant part, that the Defendant violated condition number five of his release. The warrant alleged that "[t]he Defendant failed a drug screen in the office on August 12, 2015 for [o]xycodone and Suboxone." The Defendant correctly notes in his brief that due process principles require proper notice of the allegations serving as the basis to revoke a community corrections sentence. *See Wade*, 863 S.W.2d at 408; *Gagnon v. Scarpelli*, 411 US 778, 786 (1973) (stating that minimum due process requirements provide that a defendant must receive written notice of the claimed probation violation). However, the Defendant has cited no legal authority to support a conclusion that the allegation in the warrant failed to provide adequate notice of the allegation that the Defendant failed a drug screen. The Defendant provided the sample for the drug screen, knew he failed the drug screen, admitted to unlawful drug use at the time of drug screen, and signed a written statement acknowledging his drug use. The record does not contain evidence showing that the Defendant was unaware of his own admission or that his written admission was not provided to the defense before the revocation hearing. A revocation warrant is required to state the basis for which revocation is sought by identifying the alleged violation. The Defendant's admission was presented at the revocation hearing to establish by a preponderance of the evidence that the Defendant violated the conditions of his release by failing a drug screen. We conclude that the community corrections violation warrant provided sufficient notice of the allegation against the Defendant and that the Defendant's admission to unlawful drug use was relevant and admissible evidence showing the Defendant violated the conditions of his release by failing a drug screen. The Defendant is not entitled to relief on this basis.

We, likewise, conclude that the evidence was sufficient to support the trial court's finding the Defendant had violated the conditions of his community corrections release and that the court did not abuse its discretion by revoking the Defendant's community corrections sentence. *See* T.C.A. § 40-35-311(e)(1). Once the court revoked the Defendant's community corrections sentence, it had the authority to order the Defendant to serve the remainder of his sentence in confinement. *See* T.C.A. §§ 40-35-308(a), (c), -310. The Defendant is not entitled to relief on this basis.

Based on the foregoing and the record as a whole, we affirm the judgment of the trial court.

_____
ROBERT H. MONTGOMERY, JR., JUDGE